# United States Court of Appeals

Eleventh Circuit

56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of the Court

For rules and forms visit
www.ca11.uscourts.gov

July 19, 2011

Steven M. Larimore
Clerk, U.S. District Court
400 N MIAMI AVE RM 8N09
MIAMI FL 33128-1813

FILED by ___ D.C.

JUL 13 2011

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

**Appeal Number: 09-15336-DD**
Case Style: Hollywood Mobile Estates Limited v. Seminole Tribe
District Court Number: 08-61048 CV-WPD

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:
    Original Exhibits, consisting of: one folder.
    Original record on appeal or review, consisting of: four volumes.

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, <u>but not a copy of the court's decision,</u> is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

John Ley, Clerk of Court

Reply To: James O. Delaney (404) 335-6113

Encl.

MDT-1 (06/2006)

# United States Court of Appeals
## For the Eleventh Circuit

| | |
|---|---|
| No. 09-15336 | **FILED**<br>**U.S. COURT OF APPEALS**<br>**ELEVENTH CIRCUIT**<br><br>May 23, 2011<br><br>JOHN LEY<br>CLERK |
| District Court Docket No.<br>08-61048-CV-WPD | |

HOLLYWOOD MOBILE ESTATES LIMITED,
a Michigan limited partnership,

        Plaintiff-Appellant,

LASALLE BANK MIDWEST NATIONAL
ASSOCIATION,

        Intervenor-Plaintiff
        Appellant,

versus

SEMINOLE TRIBE OF FLORIDA,

        Defendant,

UNITED STATES DEPARTMENT OF THE INTERIOR,
HON. KEN SALAZAR,
in his official capacity as Secretary of the Interior,

        Defendants-Appellees.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By:_____
Deputy Clerk
Atlanta, Georgia

-----------------------------------------------------------------
Appeals from the United States District Court
for the Southern District of Florida
-----------------------------------------------------------------

## JUDGMENT

    It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
JUL 1 9 2011
U.S. COURT OF APPEALS
ATLANTA GA.

Entered:    May 23, 2011
For the Court:    John Ley, Clerk
By:    Clark, Djuanna

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15336

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 23, 2011
JOHN LEY
CLERK

D. C. Docket No. 08-61048-CV-WPD

HOLLYWOOD MOBILE ESTATES LIMITED,
a Michigan limited partnership,

Plaintiff-Appellant,

LASALLE BANK MIDWEST NATIONAL
ASSOCIATION,

Intervenor-Plaintiff
Appellant,

versus

SEMINOLE TRIBE OF FLORIDA,

Defendant,

UNITED STATES DEPARTMENT OF THE INTERIOR,
HON. KEN SALAZAR,
in his official capacity as Secretary of the
Interior,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Southern District of Florida

---

(May 23, 2011)

Before EDMONDSON and PRYOR, Circuit Judges, and EVANS,[*] District Judge.

PRYOR, Circuit Judge:

This appeal presents issues of constitutional and prudential standing.  The

issue of constitutional standing is whether Hollywood Mobile Estates Limited

alleged an injury fairly traceable to the Secretary of the Interior or redressable by

the district court in a complaint that alleged that the Seminole Tribe of Florida had

threatened to repossess tribal property in violation of a lease between Hollywood

and the Tribe.  After the Tribe repossessed the leased property, the district court

denied, as futile, the motion of Hollywood for leave to amend the complaint to

request injunctive relief against the Secretary under the Administrative Procedure

Act, 5 U.S.C. § 551 et seq.  That decision raises an issue of prudential standing:

whether the interests of Hollywood are within the zone of interests protected by the

Indian Long-Term Leasing Act, 25 U.S.C. § 415, and its accompanying

regulations.  Because we conclude that Hollywood lacked constitutional standing

---

[*]Honorable Orinda D. Evans, United States District Judge for the Northern District of
Georgia, sitting by designation.

2

to maintain its complaint, we vacate in part the judgment entered by the district
court and remand with instructions to dismiss for lack of subject matter
jurisdiction. Because we also conclude that Hollywood lacked prudential standing
to sue the Secretary, we affirm the denial of the motion for leave to amend the
complaint as futile.

## I. BACKGROUND

On March 11, 1969, the Seminole Tribe of Florida agreed to lease lands
located within the Seminole Indian Reservation in Broward County, Florida, to
Joseph L. Antonucci. The Secretary of the Interior approved the lease. The lease
allowed use of the reservation property as a mobile home park with appurtenant
commercial facilities, community services, and amenities for the residents. The
lease provided that rent would be based either on the lessee's income from the
leased property or a minimum annual amount. The lease required the lessee to
provide certified statements of gross receipts each year to assist in rent
calculations.

Antonucci and the Tribe first agreed to a term of 50 years for the lease and
later extended that term to 55 years. The lease will expire in 2024. The lease has
been modified on several occasions, each time with the Secretary's approval. In
1970, Antonucci assigned the lease to ESCOM Enterprises, and in 1975, ESCOM

3

assigned the lease to De Anza Properties.

In 1986, De Anza Properties assigned the lease to Hollywood Mobile Estates Limited, a Michigan limited partnership. The Tribe and the Secretary approved the assignment and agreed to a related estoppel agreement at the request of Hollywood. The estoppel agreement provided that a certified public accountant in Michigan would prepare the financial statements of Hollywood, allowed encumbrance of the leased property, and provided that the lease had no uncured default at the time of the assignment. In reliance on the estoppel agreement, Hollywood paid the Tribe $400,000. Hollywood also agreed to pay 15 percent of its gross income from the leased property to the Tribe as rent.

Michigan National Bank-Oakland loaned Hollywood funds to acquire the lease. To secure the loan, Hollywood executed and delivered to Michigan National Bank various loan documents, including a promissory note, a mortgage that secured the note, a collateral assignment of rents and profits, and related financing statements. After a series of acquisitions, LaSalle Bank Midwest National Association acquired the interest in the mortgage. In 2008, Bank of America acquired LaSalle Bank and became the successor in interest to the mortgage.

Hollywood managed a mobile home park on the leased property and had no dispute with the Tribe about the lease until 2008. In a letter dated June 17, 2008,

4

the Tribe notified Hollywood of several alleged defaults on the lease. The Tribe

contended that Hollywood had breached the lease when Hollywood used an

accountant in Michigan to prepare financial statements instead of an accountant in

Florida or California, encumbranced the leased property, and failed to put the

leased property to its best use. The letter also stated that the Tribe might repossess

the leased property. On July 3, 2008, Hollywood responded with a letter to the

Tribe that denied any default or breach and demanded arbitration of the dispute.

Hollywood filed a complaint in the district court on July 8, 2008.

Hollywood alleged that it was "threatened with irreparable injury if the Tribe

resort[ed] to self-help and reenter[ed] . . . the property" and requested the district

court to "enter a temporary restraining order or a preliminary injunction to restrain

and enjoin any reentry and/or retaking of the leased premises." The complaint

named as defendants the Tribe and Dirk Kempthorne in his official capacity as

Secretary of the Interior. The complaint described the Secretary as "the approving

and indispensable party pursuant to the Lease" who had "the overall responsibility

for administering the actions taken by the Department of the Interior." The

complaint alleged that the Secretary had approved and ratified the lease and that

the lease required arbitration if Hollywood, the Tribe, and the Secretary could not

resolve a dispute about the lease. The complaint also alleged that Hollywood

"ha[d] a good faith belief and concern that the Tribe [would] resort to self help and reenter and retake the leased premises" because the Tribe had previously utilized self-help to repossess a water and sewer treatment facility in violation of a separate lease with Hollywood.

Hollywood also filed an emergency motion for a preliminary injunction that sought to prohibit the Tribe from using self-help to evict Hollywood from the leased property. The Tribe nonetheless forcibly evicted Hollywood before the district court decided the emergency motion. The Tribe has since remained in possession of the leased property, collected rental income from the mobile home park residents each month, and refused to remit this rental income to Hollywood or LaSalle Bank. The district court denied the emergency motion of Hollywood on the ground that tribal sovereign immunity would likely prevent Hollywood from prevailing on the merits.

After Hollywood filed its complaint, the Tribe initiated an administrative proceeding and requested that Franklin Keel, Eastern Regional Director of the Bureau of Indian Affairs, cancel the lease. After Keel received submissions from both Hollywood and the Tribe, he denied the request to cancel the lease. Keel stated that he had determined that Hollywood had not breached the lease. The Tribe appealed Keel's decision to the Interior Board of Indian Appeals. That

6

administrative appeal is still pending.

Hollywood moved to dismiss the Tribe after it asserted sovereign immunity, and the district court granted that motion. The district court also granted the request of LaSalle Bank to intervene as a plaintiff.

The Secretary moved to dismiss the complaint based on sovereign immunity, failure to exhaust administrative remedies, and failure to join the Tribe as an indispensable party. Hollywood then moved for leave to file an amended and supplemental complaint. Hollywood later filed a revised version of its amended complaint in which it alleged that the "refusal and failure of the [Secretary and Keel] to enforce the lease, preserve the property interests of [Hollywood] and place [Hollywood] back in possession of the property constitute[d] ultra vires actions and constitute[d] final agency action causing irreparable harm." Hollywood cited both the Mandamus and Venue Act, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. § 551 et seq., as authorities for granting relief. In a related motion, Hollywood alleged that "[m]oney damages are not sought in this case—only an injunction to compel the Secretary to enforce the lease by placing Hollywood . . . back into possession of the leasehold premises." Hollywood argued that "by refusing to enforce the lease and immediately return the possessory interest, [the Secretary and Keel] have arrived at an immediately effective

7

definitive position that inflicts an actual, concrete injury; an injury that directly affects Hollywood . . . in ways that are irreparable." LaSalle Bank did not file a motion for leave to amend or otherwise join the motion of Hollywood.

The district court denied the motion of Hollywood for leave to amend the complaint and dismissed the action with prejudice for failure to state a claim upon which relief can be granted. The district court construed the complaint as a petition for a writ of mandamus and determined that Hollywood had failed to establish that the Secretary had a nondiscretionary duty to remove the Tribe from the leased property. The court concluded that the proposed amendment to the complaint was futile because it sought the same relief.

Hollywood moved for reconsideration on the ground that the district court should have withheld its decision until the completion of the administrative appeal filed by the Tribe. The district court denied that motion. Hollywood and LaSalle Bank appealed the dismissal of the complaint, the denial of leave to amend, and the denial of reconsideration, and we directed the parties to be prepared to discuss at oral argument whether they had standing to sue the Secretary in the light of the holdings of our sister circuits in Rosebud Sioux Tribe v. McDivitt, 286 F.3d 1031 (8th Cir. 2002), and San Xavier Development Authority v. Charles, 237 F.3d 1149 (9th Cir. 2001).

8

## II. STANDARD OF REVIEW

"We review issues of standing <u>de novo</u>." <u>Common Cause/Ga. v. Billups</u>, 554 F.3d 1340, 1349 (11th Cir. 2009). "We review the denial of a motion to amend a complaint for an abuse of discretion," but "when the district court denies the plaintiff leave to amend due to futility, we review the denial <u>de novo</u> because it is concluding that as a matter of law an amended complaint would necessarily fail." <u>Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.</u>, 470 F.3d 1036, 1040 (11th Cir. 2006) (internal quotation marks omitted).

## III. DISCUSSION

We divide our discussion in two parts. First, we explain that Hollywood, in its initial complaint, failed to allege constitutional standing to sue the Secretary. Second, we explain that the district court did not err when it denied the motion of Hollywood for leave to amend the complaint because the proposed amendment was futile for lack of prudential standing.

*A. Hollywood Failed to Allege Constitutional Standing to Sue the Secretary.*

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies," U.S. Const. Art. III, § 2, and "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III," <u>Lujan v. Defenders of Wildlife</u>, 504 U.S.

9

555, 560, 112 S. Ct. 2130, 2136 (1992). Standing "determin[es] the power of the court to entertain the suit." <u>Warth v. Seldin</u>, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205 (1975). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims, and the court is powerless to continue." <u>CAMP Legal Def. Fund, Inc. v. City of Atlanta</u>, 451 F.3d 1257, 1269 (11th Cir. 2006) (citations and internal quotation marks omitted). "We are obligated to address jurisdictional questions <u>sua sponte</u>." <u>Frulla v. CRA Holdings, Inc.</u>, 543 F.3d 1247, 1250 (11th Cir. 2008).

"Article III standing must be determined as of the time at which the plaintiff's complaint is filed," <u>Focus on the Family v. Pinellas Suncoast Transit Auth.</u>, 344 F.3d 1263, 1275 (11th Cir. 2003), and "the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted," <u>Allen v. Wright</u>, 468 U.S. 737, 752, 104 S. Ct. 3315, 3325 (1984). "'[W]e should not speculate concerning the existence of standing'" because we "'lack[] the power to create jurisdiction by embellishing a deficient allegation of injury.'" <u>DiMaio v. Democratic Nat'l Comm.</u>, 520 F.3d 1299, 1301 (11th Cir. 2008) (quoting <u>Elend v. Basham</u>, 471 F.3d 1199, 1206 (11th Cir. 2006)).

The Supreme Court has explained that the "irreducible constitutional

10

minimum" of standing under Article III consists of three elements: an actual or imminent injury, causation, and redressability. Lujan, 504 U.S. at 560–61, 112 S. Ct. at 2136; see also Dermer v. Miami-Dade Cnty., 599 F.3d 1217, 1220 (11th Cir. 2010); Steele v. Nat'l Firearms Act Branch, 755 F.2d 1410, 1413–14 (11th Cir. 1985). "The party invoking federal jurisdiction bears the burden of proving standing." Bischoff v. Osceola Cnty., Fla., 222 F.3d 874, 878 (11th Cir. 2000). We must examine the complaint filed by Hollywood to determine whether it pleaded these three elements.

Hollywood alleged an imminent injury. The injury-in-fact element requires "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560, 112 S. Ct. at 2136 (footnote, citations, and internal quotation marks omitted). Hollywood satisfied this requirement when it sought "a temporary restraining order or a preliminary injunction to restrain and enjoin any reentry and/or retaking of the leased premises" because Hollywood was "threatened with irreparable injury if the Tribe resort[ed] to self-help and reenter[ed] . . . the property." Hollywood alleged that the Tribe had previously resorted to self-help to repossess other property Hollywood had leased. The Tribe later carried out its threat by forcibly evicting Hollywood from the leased property, despite Keel's determination that Hollywood

11

had not breached the lease, and by collecting rent that otherwise would have been paid to Hollywood.

Although Hollywood alleged an imminent injury, Hollywood failed to allege that its injury was fairly traceable to the Secretary. The causation element of Article III standing requires "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Lujan, 504 U.S. at 560, 112 S. Ct. at 2136 (alterations and internal quotation marks omitted). Hollywood named the Secretary as a defendant and described some responsibilities of his office, but failed to allege an action of the Secretary that had caused Hollywood any injury. Hollywood instead sought to enjoin the Tribe from repossessing the leased property because the Tribe had threatened to do so.

Our decision in Doe v. Pryor, where we held that a plaintiff's injuries were not fairly traceable to a public official because the plaintiff had failed to allege how that official had caused those injuries, 344 F.3d 1282, 1285 (11th Cir. 2003), is instructive. In Doe, several plaintiffs filed suit against the Attorney General of Alabama to enjoin enforcement of a statute that made "deviate sexual intercourse" a criminal offense, Ala. Code § 13A-6-65(a)(3). Doe, 344 F.3d at 1283–84. One

12

of the plaintiffs alleged that she had lost a custody dispute in a state court, which had cited the challenged statute in its decision. See Ex parte J.M.F., 730 So. 2d 1190, 1196 n.5 (Ala. 1998). After the Supreme Court decided Lawrence v. Texas, 539 U.S. 558, 123 S. Ct. 2472 (2003), the Attorney General of Alabama conceded that the challenged statute was no longer enforceable, Doe, 344 F.3d at 1283. We held that the plaintiff who had lost the custody dispute lacked standing because her injuries were not fairly traceable to any alleged act of the Attorney General: "The only defendant in this case is the Alabama Attorney General, and the only injuries [the plaintiff] has alleged stem from a state court custody proceeding in which the Attorney General played no role. The Attorney General has taken no . . . 'challenged action.'" Id. at 1285. See also S. Pac. Transp. Co. v. Brown, 651 F.2d 613, 614–15 (9th Cir. 1980).

The same is true here. Hollywood alleged an imminent injury related to the leased property: that is, a forcible eviction. But the Secretary played no role in that action. The Tribe acted unilaterally against Hollywood.

"It is the plaintiff's burden to plead and prove . . . causation . . . ." Steele, 755 F.2d at 1414. Hollywood failed to satisfy this burden because it did not allege that the Secretary had caused Hollywood any injury. For that reason, the district court should have dismissed the complaint of Hollywood for lack of subject matter

13

jurisdiction.

Even apart from its failure to allege causation, Hollywood also failed to allege that its injury was redressable by the district court. The element of redressability requires that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 561, 112 S. Ct. at 2136 (internal quotation marks omitted). "Redressability is established when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." Mulhall v. UNITE HERE Local 355, 618 F.3d 1279, 1290 (11th Cir. 2010) (alteration and internal quotation marks omitted). We must be able "to ascertain from the record whether the relief requested is likely to redress the alleged injury," Steele, 755 F.2d at 1415, and if we cannot, then we do not have jurisdiction to entertain the appeal. See DiMaio, 520 F.3d at 1303 (dismissing complaint for lack of standing because it did not "suggest in any way how [the] 'injury' could be redressed by a favorable judgment"). Hollywood failed to allege what the Secretary could have done to prevent the Tribe from repossessing the leased property or cite any authority that empowered the Secretary to act for the benefit of Hollywood. "It is the plaintiff's burden to plead and prove . . . redressability," Steele, 755 F.2d at 1414, and Hollywood failed to satisfy this burden. For this additional reason, the

14

district court should have dismissed the complaint of Hollywood for lack of subject matter jurisdiction.

Although the district court later allowed LaSalle Bank to intervene, LaSalle Bank added no new allegation of injury fairly traceable to the Secretary or redressable by the district court. In fact, LaSalle Bank failed to attach a copy of its pleading in intervention to its motion as required by Federal Rule of Civil Procedure 24(c). That failure means that LaSalle Bank also did not establish constitutional standing to sue the Secretary.

### B. The District Court Did Not Err When It Denied Hollywood Leave to Amend the Complaint.

Hollywood contends that the district court erred when it denied, as futile, the motion of Hollywood for leave to file an amended complaint, but Hollywood lacked prudential standing to maintain that complaint. The interests of Hollywood are not arguably within the zone of interests protected by the Indian Long-Term Leasing Act, 25 U.S.C. § 415, and its accompanying regulations, which govern the lease between Hollywood and the Tribe. The district court reached the correct result, even if for the wrong reason.

Our discussion of the denial of the motion for leave to file an amended complaint is divided in two parts. First, we explain that the amended complaint proposed by Hollywood should be construed as a request for a mandatory

15

injection against the Secretary under the Administrative Procedure Act, 5 U.S.C. §

551 et seq. Second, we explain that the proposed amendment of the complaint was

futile because Hollywood lacked prudential standing; the interests of Hollywood are

not arguably within the zone of interests protected by the Indian Long-Term

Leasing Act, 25 U.S.C. § 415, and its accompanying regulations, which govern the

lease between Hollywood and the Tribe.

　1. The Amended Complaint Should Be Construed as a Request for a Mandatory
　　　　　　　Injunction under the Administrative Procedure Act.

We must determine the nature of the relief requested by Hollywood in the

amended complaint before we address its futility. Hollywood cited both the

Administrative Procedure Act, 5 U.S.C. § 551 et seq., and the Mandamus and

Venue Act, 28 U.S.C. § 1361, as authorities for granting relief in the amended

complaint. In a related motion, Hollywood explained that it sought "an injunction

to compel the Secretary to enforce the lease by placing Hollywood . . . back into

possession of the leasehold premises." Hollywood now argues that the amended

complaint sought a mandatory injunction against the Secretary, not a writ of

mandamus. The Secretary contends that a writ of mandamus is the only possible

remedy.

The Administrative Procedure Act waives the sovereign immunity of the

United States to the extent that it permits "[a] person suffering legal wrong because

16

of agency action" to "seek[] relief other than money damages" in federal court. 5

U.S.C. § 702. "Agency action" includes "failure to act." Id. § 551(13). The Act

provides that "[t]he form of proceeding for judicial review" may "includ[e] . . . [a]

mandatory injunction . . . in a court of competent jurisdiction." Id. § 703. The Act

also provides that "the reviewing court shall . . . compel agency action unlawfully

withheld or unreasonably delayed." Id. § 706. "[A] claim under § 706(1) can

proceed only where a plaintiff asserts that an agency failed to take a discrete agency

action that it is required to take." Norton v. S. Utah Wilderness Alliance, 542 U.S.

55, 64, 124 S. Ct. 2373, 2379 (2004) (alteration in original).

The Mandamus and Venue Act provides, "The district courts shall have

original jurisdiction of any action in the nature of mandamus to compel an officer or

employee of the United States or any agency thereof to perform a duty owed to the

plaintiff." 28 U.S.C. § 1361. A district court may grant a petition for a writ of

mandamus if the defendant owes the plaintiff a "clear nondiscretionary duty" and

the plaintiff has "exhausted all other avenues of relief." Heckler v. Ringer, 466

U.S. 602, 616, 104 S. Ct. 2013, 2022 (1984); Lifestar Ambulance Serv., Inc. v.

United States, 365 F.3d 1293, 1295 (11th Cir. 2004). A writ of mandamus will not

be granted if alternative remedies are available. Heckler, 466 U.S. at 616, 104 S.

Ct. at 2022; Cash v. Barnhart, 327 F.3d 1252, 1258 (11th Cir. 2003).

17

The Supreme Court has construed a request for a writ of mandamus against
the Secretary of Commerce as a complaint under section 706 of the Administrative
Procedure Act, Japan Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 230
n.4, 106 S. Ct. 2860, 2866 n.4 (1986), and its decision is instructive. Based on that
decision, the Ninth Circuit construed a complaint that requested relief under both
the Mandamus and Venue Act and the Administrative Procedure Act as a complaint
under the Administrative Procedure Act because "the relief sought [was] essentially
the same" under either approach. Independence Mining Co. v. Babbitt, 105 F.3d
502, 507 (9th Cir. 1997). The Ninth Circuit also "question[ed] the [availability] of
the traditional mandamus remedy . . . where there [was] an adequate remedy under
the [Administrative Procedure Act]." Id. at 507 n.6. The Third Circuit similarly
concluded that the availability of injunctive relief under the Administrative
Procedure Act means that the "grant of a writ of mandamus would be improper."
Stehney v. Perry, 101 F.3d 925, 934 (3d Cir. 1996).

Based on the approach of the Supreme Court in Japan Whaling, the amended
complaint proposed by Hollywood is best construed as a request for a mandatory
injunction against the Secretary under the Administrative Procedure Act. The
proposed complaint cites the Administrative Procedure Act and seeks to "[c]ompel
[the Secretary and Keel] to enforce the [l]ease and the applicable federal law by
restoring [Hollywood] to full possession of the leasehold premises." The

18

availability of relief under the Administrative Procedure Act also forecloses a grant of a writ of mandamus.

2. The Proposed Amendment of the Complaint of Hollywood Was Futile Because Hollywood Lacks Prudential Standing.

When construed as a complaint under the Administrative Procedure Act, the amended complaint is futile because Hollywood lacks prudential standing. The interests of Hollywood are not arguably within the zone of interests protected by the Indian Long-Term Leasing Act and its accompanying regulations. The district court did not err when it denied the motion of Hollywood for leave to amend the complaint.

"In addition to the immutable requirements of Article III, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing," Bennett v. Spear, 520 U.S. 154, 162, 117 S. Ct. 1154, 1161 (1997) (internal quotation marks omitted), and when a party requests relief under the Administrative Procedure Act, we ask, as part of our review of prudential standing, "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute . . . in question," Ass'n of Data Processing Serv. Orgs. v. Camp, 397 U.S. 150, 153–54, 90 S. Ct. 827, 830 (1970). The Supreme Court has explained that our inquiry is not so demanding as to deny potential relief to a person whose interests are, at least,

19

arguably protected by the relevant statute:

> [I]n applying the "zone of interests" test, we do not ask whether, in enacting the statutory provision at issue, Congress specifically intended to benefit the plaintiff. Instead, we first discern the interests "arguably . . . to be protected" by the statutory provision at issue; we then inquire whether the plaintiff's interests affected by the agency action in question are among them.

Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co., 522 U.S. 479, 492, 118 S. Ct. 927, 935 (1998). Under this test, we must examine the Indian Long-Term Leasing Act and its accompanying regulations to determine the interests they arguably protect and then determine whether the interests of Hollywood are among those arguably protected interests.

The interests of Hollywood are not arguably within the zone of interests protected by the Indian Long-Term Leasing Act, which allows "[a]ny restricted Indian lands, whether tribally, or individually owned, [to] be leased by the Indian owners, with the approval of the Secretary of the Interior, for public, religious, educational, recreational, residential, or business purposes." 25 U.S.C. § 415(a). The Secretary's approval of leases of Indian land "is consistent with the long-standing relationship between Indians and the government in which the government acts as a fiduciary with respect to Indian property." Saguaro Chevrolet, Inc. v. United States, 77 Fed. Cl. 572, 577–78 (2007). That fiduciary relationship requires the federal government to act for the benefit of Indian landowners because

Congress intended section 415 "to protect Indian tribes and their members." <u>San Xavier Dev. Auth.</u>, 237 F.3d at 1153; <u>see also</u> <u>Utah v. U.S. Dep't of Interior</u>, 45 F. Supp. 2d 1279, 1283–84 (D. Utah 1999).

The same is true of the corresponding regulations, which charge the Bureau of Indian Affairs with regulating leases under section 415. <u>See generally</u> 25 C.F.R. pt. 162. Subpart A, <u>id.</u> §§ 162.100–162.113, and subpart F, <u>id.</u> §§ 162.600–162.623, regulate non-agricultural leases. The Bureau promulgated these regulations for several purposes: to assist Indian landowners, <u>id.</u> §§ 162.107(a), 162.108(a); to protect the interests of Indian landowners, <u>id.</u> §§ 162.102(c), 162.105(a), 162.107(a), 162.108(b), 162.604(b)(3) and (d), 162.617(a), 162.620(b); to enable the Bureau to take action to recover possession on behalf of the Indian landowners, <u>id.</u> §§ 162.106(a), 162.108(b), 162.623; and to preserve the value of Indian lands, <u>id.</u> §§ 162.102(c), 162.107(a), 162.108(b). The regulation that addresses the "responsibilities" of the Bureau "in administering and enforcing leases" provides that the Bureau acts to protect the interests of Indian tribes:

> (a) We will ensure that tenants meet their payment obligations to Indian landowners, through the collection of rent on behalf of the landowners and the prompt initiation of appropriate collection and enforcement actions.  We will also assist landowners in the enforcement of payment obligations that run directly to them, and in the exercise of any negotiated remedies that apply in addition to specific remedies made available to us under these or other regulations.

21

(b) We will ensure that tenants comply with the operating requirements in their leases, through appropriate inspections and enforcement actions as needed to protect the interests of the Indian landowners and respond to concerns expressed by them. We will take immediate action to recover possession from trespassers operating without a lease, and take other emergency action as needed to preserve the value of the land.

25 C.F.R. § 162.108. The Eighth Circuit has held that a nontribal lessee of Indian land lacked standing to sue the Secretary of the Interior under section 415 because Congress intended section 415 "to protect only Native American interests," Rosebud Sioux Tribe, 286 F.3d at 1036–37, and we agree. See also San Xavier Dev. Auth., 237 F.3d at 1153 (lessee of Indian land lacked prudential standing to sue under 25 U.S.C. § 416, a related statute that governs leases of land located within the San Xavier Indian Reservation, because the statute and accompanying regulations did not provide a remedy for the lessee). Section 415 and its accompanying regulations protect Indian landowners, not nontribal lessees.

Hollywood argues that section 415 and its accompanying regulations empower the Secretary to enforce a lease of Indian land for the mutual benefit of both parties to the lease, but the texts of those laws say otherwise. The regulation that addresses the Secretary's enforcement authority, for example, provides, "We will ensure that tenants comply with the operating requirements in their leases, through appropriate inspections and enforcement actions as needed to protect the interests of the Indian landowners." 25 C.F.R. § 162.108(b). This authority to

22

enforce leases is not for the mutual benefit of both parties; the regulation empowers the Secretary to enforce leases only for the benefit of Indian landowners. Because Hollywood is not an Indian landowner, its interests as a nontribal lessee of Indian land do not arguably fall within the zone of interests protected by section 415 and its accompanying regulations.

Hollywood also argues that the Secretary's authority to enforce leases includes the authority to eject a trespassing tribe, but the plain language of the regulations again fails to support this argument. The regulations define "[t]respass" as "an unauthorized possession, occupancy, or use of Indian land." Id. § 162.101. The regulations that address the Secretary's enforcement authority over trespassers empower him to "take action to recover possession on behalf of the Indian landowners." Id. §§ 162.106(a), 162.623. Even if we were to describe the Tribe as a trespasser on tribal land, Hollywood would still not fall within the zone of protected interests because the regulations empower the Secretary to eject trespassers for the benefit of only Indian landowners.

Hollywood relies on Yavapai-Prescott Indian Tribe v. Watt, 707 F.2d 1072 (9th Cir. 1983), but that decision lends no support to its argument. In Yavapai-Prescott, an Indian tribe sought relief in a district court after the Interior Board of Indian Appeals had reinstated a lease that the tribe had unilaterally terminated. The Ninth Circuit held that section 415 and its accompanying regulations require the

23

involvement of the Secretary in lease cancellations, id. at 1075–76, but that grant of authority is not in dispute here.  It is undisputed that an appointee of the Secretary has already determined that Hollywood did not breach the lease.  Whether the Interior Board of Indian Appeals will affirm that determination is uncertain, as the administrative appeal filed by the Tribe remains pending, but the outcome of that administrative appeal does not affect our analysis.

Hollywood argues that it must be able to seek relief against the Secretary, lest there be no remedy for a wrongful eviction by the Tribe, but this argument fails for two reasons.  First, a judicial remedy is often unavailable for contractors who have disputes with Indian tribes because of tribal sovereign immunity.  See, e.g., Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 118 S. Ct. 1700 (1998).  Second, our conclusion that Hollywood lacks prudential standing does not mean that lessees of tribal lands have no remedy whatsoever.  Lessees may potentially obtain contractual waivers of sovereign immunity or seek relief in tribal courts or administrative processes.  Whether Hollywood can now pursue these alternative forms of relief is irrelevant to our holding that Hollywood lacks prudential standing to seek relief against the Secretary under section 415 and its accompanying regulations.

Hollywood finally contends that the Secretary has the authority to enforce the lease in its favor because the Secretary represented to the district court that, if an

24

investigation revealed that Hollywood had not breached the lease, "the Bureau would be prepared to use its authority to return the parties to the status quo ante," but the Secretary's bare statement to the district court proves nothing. The Secretary offered no explanation of this supposed authority to enforce the lease in favor of Hollywood. Before this Court, the Secretary instead contends, and we agree, that the interests of Hollywood do not fall within the zone of interests protected by section 415 and its accompanying regulations.

## IV. CONCLUSION

We **VACATE IN PART** the judgment of the district court and **REMAND** with instructions to **DISMISS** for lack of subject matter jurisdiction, and we **AFFIRM** the denial of the motion for leave to amend the complaint as futile.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

25